FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/31/2022 1:30 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**JOHN DAY, as Personal Representative**
**of the Wrongful Death Estate of VERONICA**
**AYLWORTH, ROBERT AYLWORTH, and**
**PAMELA AYLWORTH,**

          **Plaintiffs,**

**v.**

**FCA US LLC,**

          **Defendant.**

**No.** D-101-CV-2022-00156
Case assigned to Sanchez-Gagne, Maria

### PLAINTIFFS' ORIGINAL COMPLAINT FOR
### WRONGFUL DEATH, LOSS OF CONSORTIUM, AND PUNITIVE DAMAGES

COME NOW Plaintiffs, by and through counsel of record, and state the following as their

Original Complaint for Wrongful Death and Punitive Damages against Defendant FCA US LLC

(referred to as "Defendant" or "FCA"):

### I.      PARTIES

1.     Plaintiff John Day, as the Personal Representative of the Wrongful Death Estate of

Veronica Aylworth, Deceased, is a resident of Santa Fe County, New Mexico. On January 31,

2022, pursuant to NMSA 1978, Section 41-2-3 and Rule 1-017(B) NMRA, Mr. Day was appointed

by this Court as the Personal Representative of the Wrongful Death Estate of Veronica Aylworth,

Deceased, for the purpose of pursuing all claims available under the New Mexico Wrongful Death

Act.

2.     At all times relevant, Decedent Veronica Aylworth ("Decedent") was a resident of

Albuquerque, New Mexico.

3.     Plaintiff Robert Aylworth is a citizen and resident of Bernalillo County, New Mexico.  Mr. Aylworth is Decedent's surviving father.

4.     Plaintiff Pamela Aylworth is a citizen and resident of Bernalillo County, New Mexico.  Ms. Aylworth is Decedent's surviving mother.

5.     Defendant FCA is a Delaware corporation duly organized and existing pursuant to law and registered to transact business in the State of New Mexico. Defendant FCA has transacted business in the State of New Mexico at all times relevant hereto, and it may be served with citation by serving its registered agent for service: Corporation Process Company, 726 E. Michigan, Suite 330, Hobbs, NM 88240.

## II.     JURISDICTION, VENUE, AND JOINDER

6.     Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article VI of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, Section 38-1-16. Defendant FCA consented to jurisdiction in New Mexico's courts through its corporate registration and appointment of an agent for service of process, pursuant to New Mexico law. Additionally, this Court has specific personal jurisdiction over Defendant FCA because it serves a market for its products in New Mexico by, among other things, marketing and distributing vehicles in New Mexico, providing service on vehicles and parts in New Mexico, providing warranties covering products in New Mexico, and deriving income from sales, service, and repair work performed by Defendant and its dealers in New Mexico. One of their vehicles then caused injury to Plaintiff's decedent, a New Mexico resident, in New Mexico.

7.     Venue is proper in Santa Fe County, New Mexico pursuant to NMSA 1978, Section 38-3-1(A) because Plaintiff John Day resides in Santa Fe County.

2

### III.   **FACTUAL BACKGROUND**

8.      All previous paragraphs are incorporated by reference.

9.      On or about March 26, 2021, Decedent Veronica Aylworth was the properly restrained driver in a 1999 Chrysler minivan bearing VIN No. 1C4GP64LXTB468571 ("the subject vehicle" or "the vehicle in question"), on eastbound I-40 in Bernalillo County, New Mexico, when Decedent's vehicle struck the rear of a tractor-trailer driving in the same direction on the highway.

10.     During the impact, the passive safety systems of the subject vehicle, including the vehicle structure, failed to provide adequate occupant protection for Decedent.

11.     The subject vehicle was designed by FCA.

12.     The subject vehicle was manufactured by FCA.

13.     The subject vehicle was also assembled and tested by FCA.

14.     Despite being properly seated and properly wearing the available seatbelt, Decedent sustained fatal injuries when the subject vehicle failed to protect her because it violated several crashworthiness principles.

**Crashworthiness Overview**

15.     Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler (now FCA), that "Every American has the right to a safe vehicle."

16.     Gerald Greenwald, chairman of Chrysler, then sent a letter to every Chrysler dealership in 1988 stating that Chrysler intended to honor that right.

17.     For decades, automobile manufacturers have been telling the general public and others how important it is to make safe vehicles.

18.     For instance, in 1993, General Motors stated that "Safety isn't one thing. It's everything."

19.     Mary Barra, CEO of General Motors, testified to Congress in 2014 that, "Our customers and their safety are at the center of everything we do." Jeff Boyer, Vice-President of Global Vehicle Safety at General Motors, has stated that "Nothing is more important than the safety of our customers in the vehicles they drive."

20.     General Motors has also stated in the past that, "The rich don't deserve to be safer … Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

21.     Ford has stated in the past that it is so obsessed with safety that only a person's mother is more obsessed with that person's safety than Ford.

22.     Honda believes that safety is for everyone, including for other vehicle occupants and for pedestrians.



23.     In 2012, Volvo stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

24.     Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

25.     Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

26.     It is further incumbent upon auto manufacturers to protect consumers by using knowledge that a manufacturer has acquired over decades and decades of vehicle design, testing, and reverse engineering of other manufacturers' vehicles.

27.     In fact, insofar as society permits vehicle manufacturers to operate in such a way that they are permitted to sell highly complex, potentially dangerous, and also potentially highly profitable products on the market, manufacturers have a duty to do their very best to ensure that the vehicle will not be harmful to buyers, their households, or third parties.

28.     This is cemented by the fact that every state of the United States has case law which holds that every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others.

## IV.     CLAIMS FOR RELIEF

### COUNT 1:
### Strict Liability: Defective Design/Manufacture/Failure to Warn

29.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

30.     Defendant is in the business of designing, manufacturing, testing, assembling, marketing, and/or distributing vehicles, including the subject vehicle.

31.     Defendant designed, manufactured, tested, assembled, marketed, distributed, and/or sold the subject vehicle that was involved in the accident that killed Decedent.

32.     The subject vehicle was defective and unreasonably dangerous for its intended use.

33.     The subject vehicle was defective at the time it left Defendant's control.

34.     Reasonable consumers would not have been aware of the defective condition of the subject vehicle.

35.     Decedent was not aware of the defects in the subject vehicle.

36.     It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving their vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

37.     The fatal injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents.

38.     The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

39.     Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, assembled, marketed, and/or distributed said vehicle in question.

40.     As detailed herein, the subject vehicle contains and/or Defendant committed either design, manufacturing, testing, assembly, marketing, and or distribution defects.

41.     Defendant either knew or should have known of at least one safer alternative design which would have prevented the serious injuries to the Decedent.

42.     As detailed herein, the vehicle contains multiple design defects, the Defendant committed multiple acts of engineering negligence and have created false, misleading, and/or deceptive marketing intended to lure prospective buyers.

43.     As illustrated herein and below are specific examples of how the vehicle was defective and/or unreasonably dangerous, how the Defendant was negligent, how the Defendant misrepresented the safety of vehicles in general, and/or how Defendant, specifically through its false, misleading, and/or deceptive marketing and ads, foisted upon the public an unsafe vehicle.

44.     In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, assembled, marketed, and/or distributed said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, tested, assembled, marketed, and/or distributed because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

a.      the subject vehicle violated principles of crashworthiness;

b.      the subject vehicle failed to provide proper restraint;

c.      the subject vehicle failed to protect restrained front seated occupants during front impact accidents;

d.      the subject vehicle failed to have the driver's side airbag in a must fire deployment event;

e.      the subject vehicle's front airbag violated FMVSS 208;

f.  the subject vehicle's driver's side airbag violated defendant's internal airbag performance specifications;

g.  the subject vehicle's front airbag failed to deploy;

h.  the subject vehicle failed to prevent forward excursion and injurious contact with the steering wheel;

i.  the driver suffered fatal injuries because she was not provided proper occupant protection;

j.  the subject vehicle was not properly subjected to rigorous engineering analysis;

k.  the subject vehicle was not properly tested to determine if the crashworthiness systems would provide reasonable safety in rear followed by a frontal impact;

l.  the defendants did not conduct finite element modeling, FEM or FEA using different restraint systems or sensing technologies;

m.  the defendants failed to utilize countermeasures to address an impact with an ICC bar on a trailer;

n.  the subject vehicle was certainly not state of the art as marketed;

o.  the subject vehicle failed to contain the most current safety related technology;

p.  the subject vehicle failed to hold paramount the safety of the public;

q.  FCA touted how everyone deserved to be safe;

r.  FCA touted that safety should not depend on how much a vehicle cost;

s.  FCA touted that everything we do centers around safety;

t.  FCA touted that your safety is our utmost responsibility;

u.  FCA touted that for too long it had delayed implementation of safety features but that mindset was over;

v.      The Defendants bragged, touted, and marketed their vehicles as being safe, state of the art, engineered to be the best, and engineered to protect families;

w.      The driver bought the subject vehicle because of these commercials, ads, and/or marketing statements;

x.      The ads, commercials, and/or marketing material turned out to be false, misleading, and/or deceptive in the opinion of the Plaintiff after this accident was over;

y.      The subject vehicle violated Defendants' core design principles, marketing principles, and safety principles that it has espoused for decades;

z.      FCA has said that building safe vehicles is the most important thing we do;

aa.     FCA has said that automobile safety is the foundation of its automobile manufacturing;

bb.     FCA has said that we have built a storehouse of safety technology since our first vehicle was built;

cc.     FCA has said that safety is one of our foremost concerns;

dd.     FCA has said that passive safety engineering means to ensure occupant survival with the least injuries in as many accident situations as possible;

ee.     FCA has said that safety is always on our mind;

ff.     FCA has said that it is fully aware of its responsibility to produce vehicles with the best overall safety possible;

gg.     FCA has said that it works hard to stay at the cutting edge of technology;

hh.     FCA has said that it believes that safety is fundamental for making vehicles;

ii.    FCA has said that we always work to improve by putting forth new ideas and making the best of our abilities;

jj.    FCA has said that it believes that everyone deserves to be safe;

kk.    FCA has pledged to the American consumer that we will have continual improvement, that we will learn from our mistakes and that we need to do better;

ll.    FCA has touted that no matter who you are and what you drive, everyone deserves to be safe;

mm.   FCA has stated that safety is of paramount importance;

nn.    FCA has stated that everything we do is to ensure occupant safety;

oo.    FCA has stated that everyone deserves a safe vehicle; and/or

pp.    The Defendants violated consumer expectations.

45.    At the time of the accident, Decedent was using the subject vehicle for a purpose and in a manner which could be reasonably foreseen.

46.    Defendant could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the subject vehicle, including Decedent.

47.    Decedent's injuries and Plaintiffs' damages were caused by a condition or conditions of the subject vehicle which were not substantially changed or unforeseeably altered after Defendants placed the subject vehicle on the market.

48.    Decedent's fatal injuries and Plaintiffs' damages were caused by the defects in the subject vehicle as outlined above.

## COUNT 2:
## Negligence

49.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

50.     In addition to and/or in the alternative to the product liability claims asserted herein, Defendant was negligent in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject vehicle.

51.     Companies that are in the business of designing, testing, manufacturing, marketing, distributing, and selling products are never allowed to needlessly endanger consumers.

52.     Nothing should be more important to companies that design, manufacture, test and sell products than consumer safety.

53.     Because nothing should be more important than consumer safety, companies that design, manufacture, and sell products should always analyze the product for potential hazards or defects – at every stage of production.

54.     In fact, for automobile manufacturers, in designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

55.     Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

56.     If the potential risks, hazards, and/or dangers cannot be eliminated, then they should be guarded against.

57.     If the potential risks, hazards, and/or dangers cannot be eliminated or guarded against, they should at least be warned about.

58.     A company that does not conduct a proper engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone is negligent.

59.     Defendant owed a duty to use reasonable care in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject vehicle.

60.     Defendant failed to use reasonable care when it designed, manufactured, tested, assembled, marketed, distributed, and/or sold the subject vehicle, and consequently put a product on the market that was unreasonably dangerous for its intended or reasonably anticipated use as discussed herein.

61.     As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics.

62.     The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

63.     Accordingly, since paramount means "superior to all others," all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles. Indeed, General Motors, for instance, has admitted under oath that its engineers have to hold paramount the safety, health, and welfare of the public, and that manufacturers have to make efforts to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

64.     Ford has also testified under oath that it agrees that a vehicle engineer's primary responsibility is to identify potential risks, hazards, and dangers that can cause serious injury or death.

65.     Ford has further testified under oath that Ford "has a moral obligation to do those things that are feasible and practical to reduce the risk of injury and death to customers."

66.     Accordingly, Defendant had a duty to conduct a proper engineering analysis and to conduct proper development, engineering, design, testing and engineering analysis that would help them to identify potential risks, hazards, and/or dangers that could seriously injure or fatally harm someone. Defendant breached said duty.

12

67.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not subjected to rigorous design, development, engineering analysis and testing.

68.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly tested for the type of impact that occurred in this case to determine what countermeasures were necessary to adequately protect occupants who have been in rear impacts followed by a front impact.

69.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly equipped to prevent injuries that are preventable.

70.     Based upon information and/or belief, the subject vehicle was not subjected to rigorous engineering analysis due to no or insufficient FEM, FEA, and/or CAD.

71.     Based upon information and/or belief, the subject vehicle was not subjected to rigorous FEM, testing and/or analysis.

72.     The Defendant had a duty to do these things. The Defendant breached said duty.

73.     When Defendant designed, manufactured, and sold the subject vehicle, it did not reinvent the wheel. Defendant used (or should have used) an enormous amount of human capital which had been acquired from numerous different engineers who had worked on many prior vehicles. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make the vehicle safer in foreseeable accidents such as what occurred in this case.

74.     Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis was performed.

75.     However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

76.     Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

77.     At the time of the accident, Decedent was using the subject vehicle for a purpose and in a manner which could be reasonably foreseen.

78.     Defendant could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the subject vehicle, including Decedent.

79.     Plaintiffs' injuries and damages were caused by a condition or conditions of the subject vehicle which were not substantially changed or unforeseeably altered after Defendant placed the subject vehicle on the market.

80.     The negligent acts and omissions of Defendant as stated above, either singularly or in combination, were a cause of Plaintiffs' injuries and damages.

## COUNT 3:
### Misrepresentation

81.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

82.     Defendant has misrepresented its concern about the safety of occupants of its vehicles.

83.     Defendant has misrepresented that safety must come first.

84.     Defendant has misrepresented that it has an obligation to protect vehicle occupants in the best possible way should the worst-case scenario arise.

85.    Specifically, for decades Defendant has touted the safety of its vehicles.

86.    The subject vehicle failed to possess all of the state of the art safety equipment qualities that the Defendant has touted for decades.

87.    The foregoing false, and/or misleading marketing, and/or violations of consumer expectations of Defendant was the producing, direct, substantial and/or proximate cause of the fatal injuries and Plaintiffs' damages.

## COUNT 4:
## Damages

88.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

89.    As a direct and proximate result of the defective condition of the subject vehicle, Defendant's negligence, and Defendant's conduct detailed above, Plaintiffs sustained significant injuries and damages.

90.    As such, Plaintiffs seek damages including the following:

Plaintiff John Day, as Personal Representative of the Wrongful Death Estate of Veronica Aylworth, Deceased:

   a)    Conscious physical pain and suffering;
   b)    Emotional pain and suffering;
   c)    Loss of enjoyment of a full life expectancy and the joys and fullness of that life, and hedonic damages in an amount to be proved at trial;
   d)    Mental anguish;
   e)    Loss of earnings and loss of earning capacity;
   f)    Loss of household services;
   g)    Loss of consortium;
   h)    Pecuniary loss;
   i)    The value of life for Veronica Aylworth apart from her earning capacity;
   j)    Funeral and burial expenses;
   k)    Exemplary damages as deemed appropriate, having regard to the mitigating or aggravating circumstances attending the wrongful acts and negligence as stated; and
   l)    Punitive damages as allowed under New Mexico law.

Plaintiff Robert Aylworth:

    a)    Loss of consortium;

    b)    All other personal injury damages to which Plaintiff is entitled under New Mexico law.

Plaintiff Pamela Aylworth:

    a)    Loss of consortium;

    b)    All other personal injury damages to which Plaintiff is entitled under New Mexico law.

**COUNT 5:**
**Punitive Damages Against Defendant FCA**

91.    All previous paragraphs are incorporated by reference.

92.    In addition to placing the unreasonably dangerous and defective subject vehicle into the market, giving rise to strict liability and negligence liability, Defendant also acted intentionally, maliciously, willfully, recklessly, and/or with wanton disregard for the safety of others.

93.    Among others, these intentional, malicious, willful, reckless, and/or wanton acts and omissions of Defendant, either singularly, in combination, or based on the cumulative conduct of employees of Defendant, were a cause of Plaintiffs' injuries and damages. Accordingly, Defendant is liable for punitive damages.

**V.    CONCLUSION**

WHEREFORE, Plaintiffs request judgment against Defendant for compensatory damages, punitive damages, pre-judgment and post-judgment interest at the legal rate, costs, and such other and further relief to which Plaintiffs may be entitled under the facts and circumstances.

Respectfully submitted,

**DURHAM, PITTARD & SPALDING, LLP**

*/s/ Justin R. Kaufman*
Justin R. Kaufman
Rosalind B. Bienvenu

Caren I. Friedman
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas  75235
Telephone: (214) 324-9000
Facsimile: (972) 387-2205
ttracy@vehiclesafetyfirm.com

***Attorneys for Plaintiffs***

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/31/2022 1:30 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**JOHN DAY, as Personal Representative**
**of the Wrongful Death Estate of VERONICA**
**AYLWORTH, ROBERT AYLWORTH, and**
**PAMELA AYLWORTH,**

No. D-101-CV-2022-00156

        **Plaintiffs,**

**v.**

**FCA US LLC,**

        **Defendant.**

## JURY DEMAND

    **COME NOW** Plaintiffs, by and through their attorneys of record, and hereby demand a trial by a twelve (12) person jury in this cause of action, and tenders the appropriate fee with the filing of this application.

        Respectfully submitted,

        **DURHAM, PITTARD & SPALDING, L.L.P.**

        /s/ *Justin R. Kaufman*
        Justin R. Kaufman
        Rosalind B. Bienvenu
        Caren I. Friedman
        505 Cerrillos Road, Suite A209
        Santa Fe, New Mexico 87501
        Telephone:  (505) 986-0600
        Facsimile:  (505) 986-0632
        jkaufman@dpslawgroup.com
        rbienvenu@dpslawgroup.com
        cfriedman@dpslawgroup.com

        E. Todd Tracy
        **THE TRACY FIRM**
        4701 Bengal Street
        Dallas, Texas  75235

Telephone: (214) 324-9000
Facsimile: (972) 387-2205
ttracy@vehiclesafetyfirm.com

***Attorneys for Plaintiff***

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
2/9/2022 1:08 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

| RETURN OF **SUMMONS** | |
|---|---|
| **First Judicial District Court**<br>**Santa Fe County, New Mexico**<br>**Post Office Box 2268 / 225 Montezuma Ave.**<br>**Santa Fe, New Mexico  87504 / 87501**<br>**Court Telephone: (505) 455-8250** | **Case Number:**<br>D-101-CV-2022-00156<br>**Assigned Judge:**<br> Sanchez-Gagne, Maria |
| **JOHN DAY, as Personal Representative of**<br>**the Wrongful Death Estate of VERONICA**<br>**AYLWORTH, ROBERT AYLWORTH,**<br>**and PAMELA AYLWORTH,**<br><br>                **Plaintiffs,**<br>**vs.**<br><br>**FCA US LLC,**<br><br>                **Defendant.** | **Defendant:**<br><br>**FCA US LLC**<br>**c/o Corporation Process Company,**<br>**Registered Agent**<br>**726 E. Michigan, Suite 330**<br>**Hobbs, New Mexico  88240** |

### TO THE ABOVE NAMED DEFENDANT(S):  Take notice that

**1.**      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

**2.**      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

**3.**       You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**      If you need an interpreter, you must ask for one in writing.

**7.**      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe County, New Mexico, this 31st day of ___January___, 2022.

KATHLEEN VIGIL
CLERK OF DISTRICT COURT

DURHAM, PITTARD & SPALDING, L.L.P.

By: _____
       Deputy

*/s/Justin R. Kaufman*_____
Signature of Attorney for Plaintiff
Justin R. Kaufman
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501

jkaufman@dpslawgroup.com
Telephone No.:  (505) 986-0600
Facsimile:  (505) 986-0632

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

2

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**JOHN DAY, as Personal Representative**        **No.**  D-101-CV-2022-00156
**of the Wrongful Death Estate of VERONICA**
**AYLWORTH, ROBERT AYLWORTH, and**
**PAMELA AYLWORTH,**

             **Plaintiffs,**

**v.**

**FCA US LLC,**

             **Defendant.**

**RETURN**[1]

STATE OF _____ )        <u>SEE ATTACHED AFFIDAVIT OF SERVICE</u>
               )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

3

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service
_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____

_____                    My Commission Expires:_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

    1.     Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
    2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

4

STATE OF NEW MEXICO, COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

**JOHN DAY, as Personal Representative of the Wrongful
Death Estate of VERONICA AYLWORTH, ROBERT
AYLWORTH, and PAMELA AYLWORTH**

 *Plaintiff(s) / Petitioner(s)*

               Case No.: D-101-CV-2022-00156

v.

**FCA US LLC**

 *Defendant(s) / Respondent(s)*

## AFFIDAVIT OF SERVICE

I, Johnny Rivas, being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents on FCA US LLC in Lea County, NM on February 4, 2022 at 11:00 am at 726 E. Michigan, Suite 330, Hobbs, NM 88240 by leaving the following documents with Kimberlie Flauto who as Clerk at Corporation Process Company is authorized by appointment or by law to receive service of process for FCA US LLC.

Plaintiffs' Original Complaint for Wrongful Death, Loss of Consortium, and Punitive Damages
Jury Demand
Summons - FCA US LLC

Additional Description:
I delivered the documents to Kimberlie Flauto, clerk for Registered Agent Corporation Process Company.

White Female, est. age 45, glasses: N, Brown hair, 180 lbs to 200 lbs, 5' 6" to 5' 9".

Signature
Johnny Rivas
(575) 631-4618

Subscribed and sworn to before me this 8 day of February, 2022, by

Gabriel Terrazas

Witness my hand and official seal.

My commission expires: 11-01-2025

STATE OF NEW MEXICO
NOTARY PUBLIC
GABRIEL TERRAZAS
Commission Number 1105891
My Commission Expires  November 01, 2025

Gabriel Torr
Notary Public